UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INTERIOR/EXTERIOR SPECIALIST
COMPANY,

        Plaintiff,                     Case Number: 06-14154
                                                 Honorable David M. Lawson
v.

LOCAL 334 OF THE LABORERS
INTERNATIONAL UNION OF
NORTH AMERICA, AFL-CIO,

        Defendant,
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS, STAYING ACTION PENDING ARBITRATION, AND ADMINISTRATIVELY CLOSING CASE

This case is an outgrowth of another matter filed in this Court and re-assigned to me as part of a general docket reorganization. In case number 04-74514, several multi-employer pension funds sued the present plaintiff and others under section 515 of the Employee Retirement and Income Security Act of 1974 (ERISA) to collect fringe benefit payments allegedly owed because Interior/Exterior Specialist Company signed an agreement to participate in a collective bargaining agreement (CBA) between the present defendant, Local 334 of the Laborers International Union of North America, AFL-CIO, and a trade association. The claims brought in the present case were pleaded in a third-party complaint that was filed in case number 04-74514. My predecessor dismissed the third-party complaint against Local 334 on July 28, 2006, prompting the present lawsuit.

The complaint in this case contains four counts: breach of contract, tortious interference with business relationships, defamation, and racial or ethnic discrimination in violation of 42 U.S.C. §

1981. The plaintiff's claims are based, *inter alia*, on its allegations that the defendant failed to notify the pension funds that the plaintiff had terminated the CBA on May 31, 2003 (which is a principal item of dispute in the other lawsuit), directed the pension funds to collect fringe benefit contributions for employees and projects that were not covered by the CBA, misinformed third parties that the plaintiff did not comply with the CBA's fringe benefit contribution requirements, and discriminated against the plaintiff based on the fact that it is a minority owned and operated business with a predominantly Latino workforce.  Local 334 moves to dismiss the entire complaint on the grounds that the claims lie within the primary jurisdiction of the National Labor Relations Board; alternatively the claims must be submitted to arbitration under the terms of the CBA; finally, the claims are preempted by section 301 of the Labor Management Relations Act of 1947.  The parties presented oral argument on January 25, 2007.  I now find that jurisdiction is proper in this Court, the defamation, and tortious interference claims are preempted by section 301 of the LMRA, the breach of contract claim may proceed under section 301 but must be submitted to arbitration, and the discrimination claim may proceed in this Court.  The motion to dismiss will be granted in part and denied in part, but the entire matter will be stayed pending arbitration proceedings in the interest of judicial economy.

I.

Plaintiff Interior/Exterior Specialists Co. (IES) was incorporated in Michigan on July 31, 1997 by Rito J. Llamas.  On April 6, 2000, Llamas signed an agreement on behalf of IES to opt in to the CBA that had been negotiated between the Associated General Contractors (AGC), the Laborers District Council, and Local 334.  The original CBA covered the period of 1997-2000 and contained an "evergreen provision" that caused the pact to be renewed automatically absent timely

notification of termination by IES. The agreement continued through the 2000-2003 version of the CBA, but IES claims that it terminated the agreement before the 2003-2006 version went into effect. The pension funds contend in the other lawsuit that not only did IES fail to terminate the contract (which then renewed automatically for the 2003-2006 term), but other corporations incorporated by Llamas and his wife (five in all) were *alter egos* of IES, which made IES liable for fringe benefit payments for projects handled by those other companies through the 2006 CBA.

The counts of the complaint in this case are premised on the plaintiff's contention that it successfully terminated its obligation under the CBA and therefore owes nothing for fringe benefit contributions after 2003. The breach of contract count is premised on the allegations that Local 334 violated its obligations under the CBA by: (1) failing to inform the pension funds that IES had terminated its relationship under the CBA; (2) providing untrained and unqualified workers; (3) permitting other union contractors to bid at rates lower than those prescribed by the CBA; (4) permitting non-union contractors to perform work on union jobs; (5) directing the pension funds to collect fringe benefit contributions for workers and projects not covered by the CBA; (6) encouraging employees to file meritless grievances; (6) failing to enforce the CBA against other signatories; (7) directing the pension funds to pursue *alter ego* claims against IES; and (8) prohibiting the pension funds from communicating with IES. The defamation count is based on the allegation that Local 334 falsely informed third-parties that IES had failed to satisfy its fringe benefit obligations. Similarly, the tortious interference count is based on the contention that Local 334 disrupted IES's business relationships with third parties through its false statements. The discrimination count is premised on the allegation that Local 334's wrongdoing and disparate treatment was all motivated by the fact that IES is Latino owned and operated.

The CBA at issue here contains a multi-stage arbitration provision that begins with "lodging" a written complaint, followed by a meeting between the employer and the Union's business manager, then referral to a joint grievance committee, and ultimately submission of "the matter to arbitration within ninety (90) calendar days before a mutually acceptable arbitrator selected by the Committee." Resp. Brf., Ex. 1, CBA at Art. XXIII. The agreement declares:

> 10. The arbitrator shall confine his decision to the dispute in question and he shall not have authority to add to, subtract from, or in any way modify the terms of this Agreement. The arbitrator's decision . . . shall be final and binding upon the Employer and the Union, and the employee or employees involved.

*Ibid.*

As mentioned above, the claims raised by the plaintiff in the present case were actually asserted by the plaintiff against Local 334 via a third-party complaint in case number 04-74514. The third-party complaint was filed on January 4, 2005, and Local 334 filed its answer on March 30, 2005. Therein, Local 334 asserted a number of affirmative defenses, including its claim that "[t]hird-party plaintiffs have failed to exhaust administrative and/or contractual remedies." *See* Case No. 04-74614, Answer [dkt # 42] at 5. The third-party complaint was dismissed on July 28, 2006, and the present action was filed on September 21, 2006.

II.

The defendant has moved for dismissal for want of subject matter jurisdiction. Federal Rule of Civil Procedure 12(b)(1) provides for dismissal due to lack of subject matter jurisdiction. When subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction in order to survive the motion. *Michigan Southern R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n, Inc.*, 287 F.3d 568, 573 (6th Cir. 2002). The defendant also cites Rule 12(b)(6) as an alternative basis for dismissal, but it does not develop any argument based on that rule. Nor has the

plaintiff responded to this "argument." In all events, it does not appear that dismissal on 12(b)(6) grounds is warranted in this case, and the motion therefore will be decided on the basis of the Court's authority to proceed in light of the primary jurisdiction, preemption, and arbitration issues presented by the parties' briefs.

A.

"As a general rule, federal courts do not have jurisdiction over activity which is 'arguably subject to § 7 or § 8 of the [NLRA],' and they 'must defer to the exclusive competence of the National Labor Relations Board.'" *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83 (1982) (quoting *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245 (1959)) (alteration in original). The question here, of course, is whether the plaintiff's claims fall within the scope of the statutes, which set out the type of conduct that constitutes unfair labor practices.

Section 7 of the NLRA states:

Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment.

29 U.S.C. § 157.

Section 8 of the NLRA deals with "unfair labor practices" by both employers and labor organizations. Since IES alleges wrongdoing on the part of Local 334, subsection (b), which covers "[u]nfair labor practices by labor organization[s]," is the potentially relevant portion of the statute. Subsection (b) provides:

It shall be an unlawful labor practice for a labor organization or its agents–

(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title . . . ; or (B) an employer in the selection of his representatives for the purposes of collective bargaining or the adjustment of grievances;

(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) of this section or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership;

(3) to refuse to bargain collectively with an employer, provided it is the representative of his employees subject to the provisions of section 159(a) of this title;

(4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or [secondary boycott] . . . ; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is [forcing employers to join a union or sign representation agreements; forcing secondary boycotts; forcing employers to bargain with a different union than the one already certified; forcing employers to assign work to workers represented by a union other than the one already recognized by the employer];

(5) to require of employees covered by an agreement authorized under subsection (a)(3) of this section [to make excessive] payment, as a condition precedent to becoming a member of such organization . . . ;

(6) to cause or attempt to cause an employer to pay or deliver or agree to pay or deliver any money or other thing of value, in the nature of an exaction, for services which are not performed or not to be performed; and

(7) to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees . . . .

29 U.S.C. § 158(b).

Consistent with the language of section 8(b), Sixth Circuit cases dealing with unfair labor practices on the part of unions involve allegations of unions threatening workers who file charges with the NLRB, *N.L.R.B. v. Construction and General Laborers' Union Local No. 534*, 778 F.2d 284, 290-92 (6th Cir. 1985), maintaining local unions segregated by gender, *N.L.R.B. v. Local No. 106*, 520 F.2d 693, 694 (6th Cir. 1975), deterring workers from withdrawing from unions, *Lee v. N.L.R.B.*, 325 F.3d 749, 754-57 (6th Cir. 2003), engaging in illegal secondary boycotts, *F.A. Wilhelm Constr. Co., Inc. v. Kentucky State Dist. Council of Carpenters, AFL-CIO*, 293 F.3d 935, 938 (6th Cir. 2002), and intimidating non-union members, *District 30, United Mine Workers of America v. N.L.R.B.*, 819 F.2d 651, 653-55 (6th Cir. 1987). Supreme Court cases applying section 8 to union activity involve the same sorts of conduct. *See, e.g., Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Const. Trades Council*, 485 U.S. 568 (1988) (holding union's distribution of handbills urging customers to not shop at mall until owner agreed to use union labor to not constitute an unfair labor practice); *N.L.R.B. v. Int'l Brotherhood of Elec. Workers, Local 340*, 481 U.S. 573 (1987) (holding union's policy of fining members who worked for employers not part of a CBA with the union to not constitute an unfair labor practice); *Pattern-Makers League of N. America, AFL-CIO v. N.L.R..B.*, 473 U.S. 95 (1985) (affirming NLRB decision finding union to have engaged in unfair labor practice by fining members who resigned during a strike and returned to work).

A plaintiff need not intend to state a claim of unfair labor practice in order to come within the exclusive jurisdiction of the NLRB. However, the essence of the complaint must involve some sort of interference with or coercion involving the right to organize and bargain collectively to fall within section 7 or 8 of the NLRA. For instance, in *Loftis v. United Parcel Service, Inc.*, 342 F.3d

509 (6th Cir. 2003), the Sixth Circuit held that a plaintiff's amended complaint alleging that the defendant employer retaliated against him for exercising his rights as a union member stated a claim arising under the NLRA. In discussing what constitutes an unfair labor practice within the meaning of the Act, albeit with respect to section 8(a), the Court explained:

> Complete preemption occurs in cases that fall within the scope of the LMRA. *Miller v. Norfolk and Western Ry. Co.,* 834 F.2d 556, 564 (6th Cir.1987) ("The complete pre-emption corollary to the well-pleaded complaint rule is applied primarily in cases raising claims pre-empted by section 301 of the LMRA.") (citing *Avco Corp. v. Machinists,* 390 U.S. 557 (1968)). Section 7 of the Act secures a worker's right to chose to join a labor union, and Section 8(a) provides, among other things, that an employer who interferes with an employee's exercise of that right, or discriminates or retaliates against an employee because of membership in a labor union or participation in union activities, commits an unfair labor practice. 29 U.S.C. § 158(a); *Goldtex, Inc. v. NLRB,* 14 F.3d 1008, 1014 (4th Cir.1994) (holding that "Section 8(a)(3) of the Act ensures that no employee may be discharged because of participation in union activities."); *Cumberland Farms, Inc. v. NLRB,* 984 F.2d 556, 560 (1st Cir.1993) ("When an employer discharges an employee for supporting a union, he violates the Act, 29 U.S.C. § 158(a)(3), unless he proves that he would have taken the same action in the absence of the employee's union activities."). The essence of an unfair labor practice under Section 8(a) is an employer's unfair treatment of an employee because of the employer's anti-union animus.
>
> The plaintiff's first amended complaint filed in state court specifically alleged that UPS's outrageous conduct was perpetrated upon the plaintiff "in an attempt to discharge [him] since he fully and actively exercised his rights as a union member." First Am. Compl. ¶ 26. The plaintiff also alleged that the defendants' conduct might result in far-reaching consequences that could "undermine the current peace between labor and management throughout the United States." *Ibid.* Whether or not he intended to plead it, the plaintiff defined an unfair labor practice. As the district court correctly observed, the allegations describe acts that could undermine the "industrial peace" that the NLRA was designed to preserve. *See Brooks v. NLRB,* 348 U.S. 96, 103 (1954). *See also NLRB v. Burns Int'l Sec. Services, Inc.,* 406 U.S. 272, 287 (1972). The district court correctly concluded that the first amended complaint contained a claim "arising under" federal law.

*Id.* at 515-16.

The nature of the claims in this case are much different than the types of actions set out above. There is no suggestion in the complaint that the defendant breached the CBA or otherwise

interfered with, defamed, or discriminated against the plaintiff for the purpose of coercing union participation, engaging in secondary boycotts, refusing to bargain in good faith, or otherwise undermining the industrial peace that the NLRA was designed to preserve. None of these claims fits within the boundaries of section 8. Instead, IES's claims belong in a federal court because they allege either breach of the CBA or require analysis of the underlying contract. *See* 29 U.S.C. § 185(a); *Mattis v. Massman*, 355 F.3d 902, 905 (6th Cir. 2004). Even if IES's claims could be construed as alleging both a violation of the CBA and an unfair labor practice, this Court exercises concurrent jurisdiction with the N.L.R.B. *Alongi v. Ford Motor Co.*, 386 F.3d 716, 724 (6th Cir. 2004) (holding that "[i]n cases . . . where a party's conduct gives rise to both a charge of an unfair labor practice under the NLRA and a claimed breach of a collective bargaining agreement under § 301, the NLRB and the district court share concurrent jurisdiction.") (internal quotation marks and alterations omitted).

The defendant's argument that the case falls within the primary jurisdiction of the NLRB is unconvincing. I must conclude, therefore, that the motion to dismiss on that ground should be denied.

B.

The defendant next contends that the claims are pre-empted by section 301 of the Labor Management Relations Act, which states:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commere as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). "As [the Sixth Circuit] has explained, '[t]he Supreme Court has interpreted this language to require federal pre-emption of state law-based actions . . . [when those actions are] inextricably intertwined with consideration of the terms of the labor contract.'" *Mattis v. Massman*, 355 F.3d at 905 (quoting *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 382 (6th Cir. 1991)) (alterations in original). In order to promote uniformity in this arena, "the Supreme Court 'has made clear that § 301 of the LMRA preempts any state-law claim arising from a breach of a collective bargaining agreement.'" *Ibid.* (quoting *Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1329 (6th Cir. 1989) (en banc)). The pre-emption rule applies to tort actions as well as contract claims where an essential element of the claim requires an interpretation of a CBA or when rights arise from a CBA. *Ibid.* To avoid preemption, the state-law claim must be "'independent' of the CBA." *Ibid.* (citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 409-10 (1989)).

In *Mattis*, the Sixth Circuit described the conditions under a which a state-law claim is subjection to section 301 preemption:

> To determine whether a state-law claim is sufficiently "independent" to survive § 301 preemption, this court has adopted a two-step inquiry. *DeCoe*, 32 F.2d at 216-17. First, courts must determine whether resolving the state-law claim would require interpretation of the terms of the collective bargaining agreement. If so, the claim is preempted. Second, courts must ascertain whether the rights claimed by the plaintiff were created by the collective bargaining agreement, or instead by state law. *Id.* at 216. If the rights were created by the collective bargaining agreement, the claim is preempted. In short, if a state-law claim fails *either* of these two requirements, it is preempted by § 301.

*Id.* at 906. Applying this test, the court deemed preempted the plaintiff's claims for tortious interference with a business relationship and intentional infliction of emotional distress (IIED). The court held the tortious interference count to be pre-empted because the relationship with which the defendant allegedly interfered was "created by the CBA." *Id.* at 907. As the court of appeals put

-10-

it, "the question of whether Massman 'interfered' with Mattis's business relationship would require us to delve into the rights and responsibilities of plant supervisors under the CBA. Undoubtedly, the supervisor would claim that his actions were consistent with his duties as a supervisor at the factory." *Ibid.* The court held the IIED count pre-empted on the theory that it would have to look to the rights and responsibilities created under the CBA to determine whether the defendant's conduct was "outrageous," a required element of an IIED claim. *See id.* at 908.

"[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) (internal citation omitted).

Under these rules, it is plain that the claim for discrimination in violation of 42 U.S.C. § 1981 is not preempted by section 301 of the LMRA. Section 301 only preempts state-law claims, not claims based on federal law. *See Mattis*, 355 F.3d at 905-06. However, the other state law claims plainly fall within the purview of section 301. The breach of contract claim by its very nature requires a determination of the rights and obligations of the parties under the CBA. In order to determine whether the defendant interfered with the plaintiff's business relations or defamed the plaintiff based on allegations that fringe benefits were not paid, the terms of the CBA and its related opt-in agreement, including the evergreen provision, must be construed.

A plaintiff bringing a defamation claim must plead and prove four elements: "(a) a false and defamatory statement concerning plaintiff; (b) an unprivileged communication to a third party; (c) fault amounting at least to negligence on the part of the publisher ; and (d) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused

by the publication (defamation per quod)." *New Franklin Enterprise v. Sabo*, 192 Mich. App. 219, 480 N.W.2d 326, 328 (1991). The defendant's statements that the plaintiff alleges are defamatory concerned the plaintiff's failure to satisfy its fringe benefit obligations as required by the CBA. The plaintiff must prove that the statements were false, which it proposes to do by showing that it terminated the CBA according to its terms before the 2003-2006 contract went into effect. Plainly, "resolving the state-law claim would require interpretation of the terms of the collective bargaining agreement"; the defamation count consequently is pre-empted by section 301. *See Mattis*, 355 F.3d at 906.

To prevail on a claim of tortious interference under Michigan law, a plaintiff must plead and prove:

> (1) the existence of a valid business relation (not necessarily evidenced by an enforceable contract) or expectancy; (2) knowledge of the relationship or expectancy on the part of the defendant interferer; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resulting damage to the party whose relationship or expectancy has been disrupted.

*Mattis*, 355 F.3d at 906 (citing *Mich. Podiatric Med. Ass'n v. Nat'l Foot Care Program, Inc.*, 175 Mich. App. 723, 438 N.W.2d 349, 354 (1989)). "However, in order to succeed under a claim of tortious interference with a business relationship, the plaintiff[] must allege that the interferer did something illegal, unethical or fraudulent." *Early Detection Center, P.C. v. New York Life Ins. Co.*, 157 Mich. App. 618, 403 N.W.2d 830, 836 (1986); *see also Formall Inc. v. Community Nat'l Bank of Pontiac*, 166 Mich. App. 772, 421 N.W.2d 289, 292 (1988) (explaining that "one who alleges tortious interference with a contractual or business relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice") (internal quotation marks omitted).

The plaintiff in this case bases its tortious interference count, at least in part, on the allegation that the defendant falsely informed project managers and construction owners that the plaintiff had failed to satisfy its fringe benefit obligations. To establish that such representations were "illegal, unethical or fraudulent," the plaintiff would presumably have to show that these representations were false, which again requires reference to the terms of the CBA to ascertain whether IES was obligated to make fringe benefit contributions despite its purported termination letter. Therefore, as is the case with the defamation count, "resolving the state-law [tortious interference] claim would require interpretation of the terms of the collective bargaining agreement." *See Mattis*, 355 F.3d at 906.

These claims may not be brought under state law; rather they either must be dismissed or brought under section 301 to the extent that they amount to a violation of the CBA. The plaintiff already has brought a breach of contract claim, although the plaintiff did not specifically cite section 301 in its complaint. Nonetheless, it is clear that the plaintiff intended to rely on this statute as the legal basis for its breach of contract claim. *See* Resp. Brf. at 5 (stating that, "as IES's claim of breach of contract is a 'suit for violation of [a] contract between an employer and a labor organization,' this suit is properly brought in [this Court] pursuant to 29 U.S.C. § 185(a)"). The state law claims for defamation and tortious interference must be dismissed, but the plaintiff may seek relief for the harm alleged in these counts insofar as it may prove damages in the breach of contract claim.

C.

The defendant finally argues that if any of the claims survive, they should be sent to arbitration. The CBA plainly contains an arbitration clause in Article XXIII addressing claims that

arise from the CBA; however the plaintiff contends that the defendant has delayed in asserting its right under that clause and therefore waived its right to arbitrate.

In *O.J. Distributing, Inc. v. Hornell Brewing Company, Inc.*, 340 F.3d 345 (6th Cir. 2003), the Sixth Circuit acknowledged that the Federal Arbitration Act, 9 U.S.C. § 3, "requires" a court to stay an action subject to a written arbitration agreement between the parties, since "there is a strong presumption in favor of arbitration, and . . . waiver of the right to arbitration is not to be lightly inferred." *Id.* at 357 (citing *Cotton v. Slone*, 4 F.3d 176, 179 (2d. Cir. 1999). However, the court recognized:

> An agreement to arbitrate may be waived by the actions of a party which are completely inconsistent with any reliance thereon. Although a waiver of the right to arbitration is "not to be lightly inferred," a party may waive the right by delaying its assertion to such an extent that the opposing party incurs actual prejudice.

*Ibid.* (internal quotes and citations omitted).

The plaintiff claims that the defendant has waived its right to arbitration largely based on its contention that the defendant failed to assert this right when filing its answer to the third-party complaint in case number 04-74514. The record fails to support this argument. In its answer, Local 334 asserted four affirmative defenses, one of which was that the "[t]hird-party plaintiffs have failed to exhaust administrative and/or contractual remedies." Case No. 04-74614, Answer [dkt # 42] at 5. Although Local 334 may not have specifically used the word "arbitration" or identified the relevant provision by article number, Local 334 unambiguously invoked its right to rely on the CBA's remedial process, including arbitration. Because the defendant asserted its right to arbitrate and the plaintiff has not offered any evidence to suggest that the defendant acted inconsistently with a reliance upon this right, there is no basis to conclude the defendant waived its right to arbitrate the claims arising from the CBA. *See Hornell Brewing*, 340 F.3d at 357.

III.

For the reasons stated above, I conclude that none of the claims amounts to an unfair labor practice, the state law tort claims must be dismissed under the pre-emption rule, the plaintiff has stated a claim under section 301 of the LMRA, that claim must be submitted to arbitration, and the plaintiff may proceed on its claim under 42 U.S.C. § 1981.  However, because the section 301 matter must be stayed pending the arbitration, and arbitration may result in resolving all disputes between the parties, I will stay the section 1981 claim as well until the conclusion of the arbitration, whereupon the plaintiff may apply to this Court to lift the stay and proceed with the matter.

Accordingly, it is **ORDERED** that the defendant's motion to dismiss [dkt# 8] is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that counts two and three of the complaint alleging defamation and tortious interference with a business relationship are **DISMISSED**.

It is further **ORDERED** that the matter in this Court is **STAYED** pending the completion of the arbitration proceedings according to the terms of the collective bargaining agreement.

It is further **ORDERED** that the plaintiff's claim under 42 U.S.C. § 1981 is held in abeyance until the completion of the arbitration of the other claims, or until it is determined that no arbitration shall take place, whichever is sooner; whereupon the plaintiff may apply to lift the stay and proceed with that claim in this Court.

It is further **ORDERED** that the Court shall retain jurisdiction to review and enforce or vacate, as appropriate, any arbitral award; however the matter shall be **ADMINISTRATIVELY CLOSED** for statistical purposes until such time as a party shall apply to this Court for further relief.

                                                s/David M. Lawson  
                                                DAVID M. LAWSON  
                                                United States District Judge

Dated: March 21, 2007

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 21, 2007.

                                      s/Felicia M. Moses  
                                      FELICIA M. MOSES